IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOMMY BROWN and R. DAVID NEW,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PEAK RESORTS, INC.,<br><br>　　　　　　Defendant. | Civil Action No.<br><br>COMPLAINT FOR INJUNCTION |

**COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Tommy Brown and R. David New (collectively "Plaintiffs") seek a permanent injunction requiring a change in Peak Resorts, Inc.'s ("Defendant" or "Peak Resorts") corporate policies to cause Peak Resorts' websites to become, and remain, accessible. In support thereof, Plaintiffs assert as follows:

**INTRODUCTION**

1.　"Being unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013), *available at* https://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf (last accessed November 21, 2017).

2.　Peak Resorts is a leading owner and operator of high-quality, individually branded ski resorts in the United States. Peak Resorts currently operates 14 ski resorts primarily located in the Northeast and Midwest, 13 of which Peak Resorts owns.

3. According to its July 13, 2017 10-K, Peak Resorts promotes season passes to its resorts through targeted direct mail marketing, local sporting goods stores, and the Internet.

4. Peak Resorts owns, operates, and controls various websites, including but not limited to: www.peakresorts.com, www.peakpass.com, www.alpinevalleyohio.com, www.attitash.com, www.bmbw.com, www.crotchedmtn.com, www.hiddenvalleyski.com, www.huntermtn.com, www.jfbb.com. www.skimadriver.com, www.mountsnow.com, www.paolipeaks.com, www.skisnowcreek.com and www.skiwildcat.com (collectively "Websites").

5. Consumers may use these Websites to learn more about Peak Resorts' particular resort locations, including lodging options, special offers, equipment rental, ski and snowboard instruction, retail, and other services. Consumers can also use the Websites to buy lift tickets and season passes, research wedding or conference options, and contact customer service.

6. Unfortunately, Peak Resorts denies approximately 7 million[1] Americans who are visually impaired access to its Websites' goods, content, and services because the Websites are largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

7. Screen reader programs convert a website's text, buttons, links, and text fields to audio. Without screen reader programs, blind or visually impaired individuals cannot independently access the Internet, where everyday activities such as shopping, banking, and vacation research have become commonplace.

---

[1] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed May 4, 2017).

8. Plaintiffs bring this civil rights action against Peak Resorts to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

9. By failing to make its Websites available in a manner compatible with computer screen reading programs, Peak Resorts, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress

10. Because Peak Resorts' Websites have never been accessible and because Peak Resorts does not have, and has never had, a corporate policy that is reasonably calculated to cause its Websites to become and remain accessible, Plaintiffs invoke 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring:

   a) that Peak Resorts retain a qualified consultant acceptable to Plaintiffs ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of its Websites so the goods and services on them may be equally accessed and enjoyed by individuals with vision related disabilities;

   b) that Peak Resorts work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis;

c) that Peak Resorts work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Peak Resorts' Websites may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d) that Peak Resorts work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Peak Resorts' Websites may be equally accessed and enjoyed by individuals with vision related disabilities; on an ongoing basis;

e) that Peak Resorts work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Websites, along with an e-mail address and toll free phone number to report accessibility-related problems;

f) that Peak Resorts retain the Mutually Agreed Upon Consultant to provide onsite training to create accessible content at the design and development stages; and

g) that Plaintiffs, their counsel and its experts monitor the Websites for up to two years after the Mutually Agreed Upon Consultant validates the Websites are free of accessibility errors/violations to ensure Peak Resorts has adopted and implemented adequate accessibility policies.

11. Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

12. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

13. Peak Resorts purposefully targets and otherwise solicits business from Pennsylvania residents through its Websites. Because of this targeting, it is not unusual for Peak Resorts to conduct business with Pennsylvania residents. In fact, the opposite is true: Peak Resorts clearly does business over the Internet with Pennsylvania residents, having entered into contracts with Pennsylvania residents that involve the knowing and repeated transmission of computer files over the Internet.

14. Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff Brown's claims occurred.

## PARTIES

15. Plaintiff Brown is and, at all times relevant hereto, has been a resident of Allegheny County, Pennsylvania. Plaintiff Brown is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

16. Plaintiff New is, and at all times relevant hereto, has been a resident of the State of Florida. Plaintiff New is, and at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff New is a member of and serves as President of Access Now.

17. Defendant is a Missouri corporation with its principle place of business located at 17409 Hidden Valley Drive, Wildwood, MO 630225. Peak Resorts' Websites are a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO ALL CLAIMS

18. While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

19. Individuals with vision related disabilities may access websites using screen reader programs that convert text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet. Unless websites are designed to be read by screen reader software, individuals suffering visual impairments are unable to fully access websites and the content and services they make available.

## PEAK RESORTS' ONLINE CONTENT

20. Consumers may use Peak Resorts' Websites to learn more about its particular resort locations, including lodging options, special offers, equipment rental, ski and snowboard instruction, retail, and other services. Consumers can also use the Websites to buy lift tickets and season passes, research wedding or conference options, and contact customer service.

21. Consumers may use the Websites to connect with Peak Resort on social media, using sites such as Facebook, Instagram, Twitter, and YouTube.

22. The Websites also include important information regarding corporate information, like Defendant's Snow Guarantee, Terms of Use, Privacy Policy, and instructions on how to contact customer service.

## HARM TO PLAINTIFF

23. Plaintiff Brown has attempted to use Peak Resorts' Websites. Unfortunately, because of Peak Resorts' failure to build its Websites in a matter that is compatible with screen reader programs, he is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use.

24. Mr. Brown attempted to access the Websites with the same screen reader program he uses to browse the Internet, but found them to be largely unusable due to various accessibility barriers. For example:

(a) As to www.peakresorts.com:

i. The website's heading levels are inconsistent and often out of order, such that Mr. Brown cannot navigate the website without frustration. For example, an H3 heading follows an H1 heading on the website's homepage.

ii. Forms and text boxes throughout the website lack proper labels, making it nearly impossible for screen reader users to complete a form correctly.

(b) As to www.peakpass.com:

i. Various pages on the website lack headings, such that Mr. Brown cannot navigate the website without frustration.

ii. There is no outlet which consumers with disabilities may contact to offer feedback about the website's accessibility or for help.

(c) As to www.alpinevalleyohio.com:

          i.        Graphics throughout the website lack alternate text describing their content.

          ii.       Various icons throughout the website lack proper labels, making it difficult to discern where they will take Mr. Brown if activated, or "clicked."

    (d)     As to www.attitash.com:

          i.        Mr. Brown cannot use his keyboard to close popup windows that appear on the website, blocking him from the website's underlying content.

          ii.       Mr. Brown cannot access form fields on the website's "Buy Lift Tickets" page.

    (e)     As to www.bmbw.com:

          i.        Mr. Brown cannot use his keyboard to access the website's navigation menu, which is accessible to a mouse, only.

          ii.       Graphics throughout the website lack alternate text describing their content.

    (f)     As to www.crotchedmtn.com:

          i.        Buttons throughout the website lack labels, making navigation an exercise of trial and error.

          ii.       Mr. Brown cannot access the website's weather forecast feature, for which there is no alternative text.

    (g)     As to www.hiddenvalleyski.com:

          i.        The website's sub-menus are not accessible with a keyboard.

          ii.       The website's pages lack proper regions, which makes it difficult to access the navigation menu.

  (h) As to www.huntermtn.com:

    i. The website's pages lack proper regions, which makes it difficult to access information at the bottom of a page.

  (i) As to www.jfbb.com:

    i. Mr. Brown could not select a date when he attempted to purchase tickets online.

    ii. Buttons throughout the website lack labels, making navigation an exercise of trial and error.

  (j) As to www.skimadriver.com:

    i. Like www.jfbb.com, Mr. Brown could not select a date when he attempted to purchase tickets online.

    ii. Like www.jfbb.com, buttons throughout the website lack labels, making navigation an exercise of trial and error.

  (k) As to www.mountsnow.com:

    i. Mr. Brown could not activate, or "click," "EXPLORE," "ACTIVITIES," and "BOOK" in the website's navigation menu with his screen reader.

    ii. Screen reader users cannot select dates for the purchases they wish to make on the website, which puts a halt to their online order.

  (l) As to www.paolipeaks.com:

    i. The website's Contact Us form lacks proper labels, which makes it even more difficult for consumers with disabilities to contact Peaks Resorts about the access barriers they encounter on its websites.

          ii.       The website includes various Waivers and other forms which screen reader users cannot complete in their current format.

    (m)    As to www.skisnowcreek.com:

          i.       Screen reader users cannot navigate the website's online payment platform with a keyboard.

          ii.       The website misuses heading levels, such that almost all content on the website's homepage appears as an H1 heading, and no content appears as an H2 heading. Such misuse frustrates a screen reader's ability to navigate the website.

    (n)    As to www.skiwildcat.com:

          i.       The website does not alert screen reader users to the navigation menu's drop down, submenus. As a result, screen reader users cannot access these key areas of the website.

          ii.       Screen reader users cannot select a date with their keyboard. As a result, they are unable to purchase tickets online.

25.    Plaintiff New has also attempted to use Peak Resorts' Websites. Unfortunately, because of Peak Resorts' failure to build its Websites in a matter that is compatible with screen reader programs, he is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use.

26.    As a result of visiting Peak Resort's Websites and from investigations performed on their behalf, Plaintiffs are also aware the Websites include at least the following additional barriers that deny individuals with visual impairments access to Peak Resorts' Websites:

    (a)    Alternatives that present information in a way that sight or hearing impaired visitors can use is not provided for audio-only or video-only pre-recorded media presentations;

(b) Media presentations do not include corresponding alternatives for site impaired users, like an audio description of video content or a text equivalent.

(c) Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

(d) Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

(e) Not all functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function depends on the path of the user's movement.

(f) Web pages lack titles that describe their topic or purpose;

(g) Not all functions are able to be executed with a keyboard. For example, on www.alpinevalleyohio.com, the navigation menus are only present for mouse users,

(h) The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context.

(i) Labels or instructions are not always provided when content requires user input. For example, on some of the websites the "Contact Us" form has labels that are missing or not properly labeled making it difficult for vision impaired persons to properly complete the form;

(j) In content implemented using markup languages, elements do not always have complete start and end tags, are nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(k) The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

27. These barriers, and others, have denied Plaintiffs full and equal access to all of the services the Websites offer, and now deter them from attempting to use the Websites or visiting one of Peak Resorts' locations in the future. Still, Plaintiffs would like to, and intend to, attempt to access Peak Resorts' Websites in the future to research the goods and services Peak Resorts offers, or testing the Websites for compliance.

28. If the Websites were accessible, *i.e.* if Peak Resorts removed the access barriers described above, Plaintiffs could independently shop for and research products via Peak Resorts' Websites.

29. Though Peak Resorts has centralized policies regarding the maintenance and operation of its Websites, Peak Resorts has never had a plan or policy that is reasonably calculated to make its Websites fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

30. The law requires that Peak Resorts reasonably accommodate Plaintiffs disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

31. Plaintiffs above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of websites comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). *Available at* https://www.w3.org/ (last visited November 20, 2017).

32. Plaintiffs have been, and in the absence of an injunction will continue to be, injured by Peak Resorts' failure to provide its online content and services in a manner that is compatible with screen reader technology.

### PEAK RESORTS' KNOWLEDGE OF WEBSITE ACCESSIBILITY REQUIREMENTS

33. Peak Resorts has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

34. Indeed, as the Disability Rights Section reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts, it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

### THE PARTIES HAVE NO ADMINISTRATIVE REMEDIES TO PURSUE

35. There is no DOJ administrative proceeding that could provide Plaintiffs with Title III injunctive relief.

36. While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiffs with relief.

37. Plaintiffs allege violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

38. Resolution of Plaintiffs' claim does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether Peak Resorts offers content and services on its Websites, and (b) whether Plaintiffs can access the content and services.

## SUBSTANTIVE VIOLATION
### (Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

39. The assertions contained in the previous paragraphs are incorporated by reference.

40. Peak Resorts' Websites are a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

41. In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Peak Resorts does not provide Plaintiffs with full and equal access to its Websites, it has violated the ADA.

42. In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. Id.; see also MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

43. Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

44. Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions.  28 C.F.R. §§ 36.303(b)(2), (4).

45. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.  28 C.F.R. §§ 36.303(c)(1)(ii).

46. By failing to provide its Websites' content and services in a manner that is compatible with auxiliary aids, Peak Resorts has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

(a) denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on Peak Resorts' Websites;

(b) affording individuals with visual disabilities access to Peak Resorts' Websites that is not equal to, or effective as, that afforded others;

(c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d) denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

47. Peak Resorts has violated Title III by, without limitation, failing to make its Websites' services accessible by screen reader programs, thereby denying individuals with visual disabilities the benefits of those Websites, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

48. Peak Resorts has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Websites to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

49. Making its online goods, content, and services compatible with screen reader programs does not change the content of Peak Resorts' Websites or result in making the Websites different, but rather enables individuals with visual disabilities to access the Websites Peak Resort already provides. *See* MIT Statement of Interest, p. 20; *see also* Harvard Statement of Interest, p. 20.

50. Peak Resorts' ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiffs and other individuals with visual disabilities.

51. Plaintiffs' claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

52. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

53. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Websites are fully accessible to, and independently usable by, individuals with visual disabilities;

54. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its Websites into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Websites are fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs is described more fully in paragraph 10 above.

55. Payment of costs of suit;

56. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (*see Hadix v. Johnson*, 143 F.3d 246 (6th Cir. 1998), *aff'd in part, rev'd in part*, 527 U.S. 343 (1999); *Jenkins v. Missouri*, 127 F.3d 709 (8th Cir. 1997); *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996); *Stewart v. Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993) (district court should permit

compensation for the postjudgment monitoring efforts by the plaintiffs' counsel that are "useful and necessary to ensure compliance with the court's orders"); *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984); *Adams v. Mathis*, 752 F.2d 553 (11th Cir. 1985); *Willie M. v. Hunt*, 732 F.2d 383, 385, 387 (4th Cir. 1984); *Bond v. Stanton*, 630 F.2d 1231, 1233-34 (7th Cir. 1980); *Northcross v. Board of Educ.*, 611 F.2d 624, 637 (6th Cir. 1979) ("Services devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed working . . . are essential to the long-term success of the plaintiff's suit.")); and

57. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: November 27, 2017                                   Respectfully Submitted,

*/s/ Benjamin J. Sweet*
Benjamin J. Sweet (PA Bar No. 87338)
bsweet@carlsonlynch.com
Kevin W. Tucker (PA Bar No. 312144)
ktucker@carlsonlynch.com

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322.9243

*Counsel for Plaintiffs*